IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 16, 2026

## STATE OF TENNESSEE v. TERESA KAY NOLAN

**Appeal from the Circuit Court for Maury County**
**No. 29512     David L. Allen, Judge**

_____

**No. M2025-00562-CCA-R3-CD**

_____

Following a jury trial, Defendant, Teresa Kay Nolan, was convicted of two counts of aggravated assault and one count of reckless endangerment with a deadly weapon, for which she received a total effective sentence of four years. On appeal, Defendant contends that: (1) the evidence is insufficient to support her convictions for aggravated assault; (2) the trial court committed plain error by failing to provide a jury instruction on self-defense; (3) the trial court abused its discretion by allowing the State to cross-examine Defendant regarding her prior conviction for attempted impersonation of a licensed professional; and (4) the trial court abused its discretion when it permitted the State to cross-examine her regarding her violation of bond conditions. Upon review, we affirm the conviction in count 2 but remand for entry of a corrected judgment, reflecting Defendant's conviction for reckless endangerment with a deadly weapon and imposing a concurrent one-year sentence. We affirm the judgments of conviction in counts 1 and 3 in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed;**
**Case Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which J. ROSS DYER and MATTHEW J. WILSON, JJ., joined.

Larry Samuel Patterson, Jr., Columbia, Tennessee, for the appellant, Teresa Kay Nolan.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Michael J. Hurst,[1] Qualified Law Student; Brent Cooper, District Attorney General; and Ross Boudreaux, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] Mr. Hurst participated in this case as a qualified law student pursuant to authority granted by Tennessee Supreme Court Rule 7, section 10.03.

# OPINION

## I. Factual and Procedural Background

On September 28, 2021, Defendant was arrested by the Columbia Police Department for an incident in which she allegedly pointed a loaded gun at three occupants of an SUV that she was following. The Maury County Grand Jury subsequently indicted Defendant on three counts of aggravated assault. Prior to trial, the State filed a Notice of Intent to Introduce Prior Bad Acts, which listed Defendant's prior convictions for attempted impersonation of a licensed professional and violation of conditional release.

The case proceeded to trial in April 2024. At the start of trial, the State reduced the charge in count 2 to the lesser-included offense of reckless endangerment with a deadly weapon.

### *State's proof*

Lynn Thompson, the assistant director of Maury County 9-1-1, testified that dispatch received two 9-1-1 calls on the afternoon of September 28, 2021. The first call was made by Defendant at 2:02 p.m. and was followed by a call from C.B.[2] at 2:07 p.m. Mr. Thompson identified recordings of the two calls.

C.B. testified that he was seventeen years old on September 28, 2021. That afternoon, he picked up two friends, W.P. and I.S., from an apartment in Maury County. C.B. was driving his mother's brand-new black Jeep Cherokee. As C.B. drove towards his home, he realized a white vehicle[3] was following him "very, very closely." C.B. turned into a neighborhood, and the other vehicle continued closely behind him. At that time, I.S., who was sitting in the back seat of his SUV, "flicked off" the driver of the vehicle tailgating them.

C.B. testified that he had "no idea" why the driver of the white vehicle was following him. He said he had not been driving in a dangerous manner but, instead, was driving carefully because he was in his mother's car.

When C.B. got to the top of a big hill in the neighborhood, he pulled over and turned on his hazard lights because he wanted to see why he was being followed. The driver of the white vehicle, whom he identified as Defendant, pulled up next to him with part of her

---

[2] It is the policy of this court to refer to minor victims by their initials only.

[3] The testimony at trial established only that Defendant's vehicle was a white Kia; the record contains no additional information about the model of the vehicle.

vehicle in the oncoming lane of traffic. When C.B. looked at Defendant, he saw that she was pointing a gun towards his head. C.B. described the weapon as "a black handgun" that "wasn't a revolver." He estimated that Defendant had been following him for about two minutes before he pulled over, and she pointed the gun at him.

C.B. testified that he was scared and "feared for [his] life" when Defendant pointed the gun at him and that he immediately "hit the gas" and fled from Defendant, who continued to follow him through the neighborhood. C.B. testified that, to get away from Defendant, he ran a stop sign and pulled out in front of another car onto a main road as he left the neighborhood. Defendant then crossed over a double yellow line and drove into oncoming traffic to catch up to C.B. and get back behind him.

C.B. testified that, after Defendant pointed the gun at him, he called 9-1-1. He identified recordings of his call and Defendant's call to 9-1-1. During Defendant's 9-1-1 call, she reported that C.B. hit her vehicle. C.B. testified, "That did not happen. I was in my mom's brand-new car. The car was brand new. There's still no marks [on] it to this date." C.B. also denied Defendant's report that he was swerving in and out of traffic. Although C.B. agreed that, at one point in the recording, Defendant said, "Get out of the car[,]" he testified that neither he nor his friends opened the doors or exited his SUV at any time. Later in Defendant's 9-1-1 call, she claimed that C.B. "swerved and hit her window" and that he hit her vehicle twice; C.B. denied that this happened. He further denied Defendant's assertions that he was "brake checking" her and that someone threw something out of his SUV.

While on the phone with 9-1-1, C.B. drove to a little league baseball field on Lion Parkway and then stopped to wait for police. He testified that officers arrived about a minute later, and he identified a photograph of his SUV taken after, which showed there was no damage to his SUV.

On cross-examination, C.B. agreed that his SUV had a "pretty dark" tint to its windows. He agreed that Defendant never got out of her vehicle during the incident. C.B. denied that he "almost hit" Defendant's vehicle and another vehicle during the incident. He further denied that he opened his car door and hit Defendant's passenger-side mirror, and he disagreed that a sound on the recording of Defendant's 9-1-1 call was that of a car door opening.

W.P. testified that he was sixteen years old on September 28, 2019. That afternoon, he was riding in the front passenger seat of C.B.'s car after C.B. picked him and I.S. up at their apartment complex. At one point, they noticed a white vehicle following them; C.B. took several turns, and it continued to follow them. C.B. then pulled over, and the driver of the white vehicle, whom W.P. identified as Defendant, pulled up beside them. W.P.

testified that Defendant pointed a gun directly towards C.B. and W.P., holding it with both hands. W.P. initially said that he saw Defendant reach for her gun but then acknowledged he was not sure, explaining, "[T]he first thing I [saw] was the gun pointed at me and my friends[.]"

W.P. stated that he and his friends "ducked and drove off instantly[,]" and C.B. called 9-1-1. He testified that neither he nor his friends opened the car doors. He said that he did not see the gun again until Defendant got out of her vehicle at the baseball field with the gun "[o]n the side of her hip."

W.P. testified that he had no idea why Defendant began following them, but he acknowledged that I.S. "shot her a bird[.]" W.P. said that he and his friends were scared when Defendant pointed the gun at them. He testified that it was "the scariest thing that ha[d] ever happened to [him] so far." W.P. denied that C.B. hit Defendant's vehicle at any point or "almost ran anybody off the road[.]" He further denied Defendant's claims that someone threw a baggie from the SUV and that C.B. was "brake checking" her.

Kim Boyd, C.B.'s mother, testified that she was at work on September 28, 2021, when she received a call from C.B. around 2:00 p.m. Based upon the call, she immediately left work and went to the little league baseball field. Mrs. Boyd stated that she had recently purchased a brand-new 2021 Jeep Cherokee, which she had allowed C.B. to drive that day. She confirmed C.B.'s testimony that there was no damage to her car following the incident with Defendant.

Columbia Police Department Officer Matt Burns testified that he was dispatched to the baseball field on Lion Parkway around 2:10 p.m. on September 28, 2021. Officer Burns spoke to Defendant and the occupants of the black Jeep Cherokee. Defendant had a gun in a holster on her right hip, which Officer Burns confiscated. Officer Burns testified that the gun was loaded with a Ruger magazine containing fifteen 9mm rounds.

After speaking with Defendant, Officer Burns checked the passenger side of her vehicle, including the passenger-side mirror, and found no damage. Defendant claimed that the occupants of the SUV threw a plastic baggie from the driver's side as she followed them; Officer Burns testified, however, that another officer drove back through the neighborhood and did not find anything.

Officer Burns acknowledged that he had previously pulled his service weapon while seat-belted into the driver's seat of his patrol car.

- 4 -

## *Jury-out hearing*

Prior to Defendant's testimony, the trial court held a jury-out hearing regarding the admissibility of her conviction for attempted impersonation of a licensed professional, a Class A misdemeanor for which Defendant received a suspended sentence of eleven months and twenty-nine days. During the hearing, the State introduced a certified copy of the conviction, noted that the charge stemmed from an alleged forged document, and argued that the conviction was admissible under Tennessee Rule of Evidence 609. Defense counsel acknowledged that Defendant pleaded guilty to attempted impersonation of a licensed professional in 2016 but argued that this was not a crime of dishonesty because Defendant had not known that her license had expired. Defense counsel further asserted, "And then I think you've also got to look at the probative value. If it involves dishonesty, you know, what's the . . . probative value versus unfair prejudice?" The trial court found that the conviction involved a crime involving dishonesty or false statement and concluded that the conviction was admissible.

The trial court also addressed the admissibility of evidence concerning Defendant's violating bond conditions in the instant case. The State explained that the incident involved Defendant's "telling an apparent false statement to a police officer" when she "was found in public with a pistol on her hip[,]" in violation of her bond conditions. The State noted that, when confronted about this by a police officer, Defendant told the officer she was unaware that she was restricted from carrying a firearm, despite Defendant's having signed a document listing this prohibition as a condition of her bond.

In response, defense counsel argued that the probative value of the evidence did not outweigh its prejudicial effect. Defense counsel agreed that Defendant had signed the document setting out her bond conditions but that, according to Defendant, she did not read the document and was thus unaware of the condition.

In ruling that the State could cross-examine Defendant regarding the incident, the trial court found that there was a reasonable factual basis for the inquiry and that the probative value of the evidence was not outweighed by its prejudicial effect. The court noted that, "[h]ad this involved [Defendant's] pulling a gun as opposed to merely possessing it," the court would have agreed with defense counsel that "the prejudicial effect would outweigh the probative value [of the false statement]."

## *Defense proof*

Defendant testified that she was previously employed as a transportation officer for both state and federal inmates and as an armed security guard. She said that on September 28, 2021, she was driving on James Campbell Boulevard towards the mall. She was

- 5 -

traveling in the fast lane when she saw a black SUV in her rearview mirror, "weaving in and out of traffic." She could not see who was inside the SUV because the windows were tinted. She testified that the SUV "whipped over in front of [her,]" forcing her to drive into the median. Defendant continued, "Then they whipped back over again, and there was an older black gentleman in an old truck, ran [him] almost into the bridge right there . . . . And then they took off[.]"

Defendant testified that she followed the SUV to get its tag number and that she was going to call the Columbia Police Department and "have them handle it." She said, however, that she called 9-1-1 after the SUV almost hit a child riding a bicycle. She stated that, as she followed the SUV through the neighborhood, it ran two stop signs. Defendant estimated that she was "at least a car-and-a-half behind them" when the SUV stopped in the middle of the road. She said that she pulled up beside the SUV, and C.B. partially rolled down his window. Defendant told C.B. to "stay right there" and that she was on the phone with 9-1-1.

Defendant testified that C.B. opened the driver's side door, and the door hit her vehicle's passenger-side mirror, causing it to "flex" and then "bounce back." She explained that was why she told the 9-1-1 operator, "He hit me; he hit me." When asked what she was thinking at the time, Defendant said, "Survive to protect myself. I mean, I don't know who else was in there." She said that she automatically reached for her gun, "as trained," but that she was unable to pull it from the holster because she had on her seat belt. She testified that C.B. then shut his car door and "took off[,]" and she continued to follow him. She then saw someone throw a clear baggie from the driver's side of the SUV.

Defendant agreed that, in 2016, she worked as a bartender, which required her to have an ABC license. She further agreed that she pleaded guilty to attempted impersonation of a licensed professional for serving alcohol after her license expired. She explained, however, that the manager of the restaurant where she worked had not informed her of the expired license.

Defendant also acknowledged that she was placed on bond following her arrest on September 28, 2021, and that one of the conditions of her bond was that she could not carry a firearm. She testified, however, that she had a job as a traffic officer that required her to carry a gun. While working at an intersection on October 18, 2023, there was a wreck, and Defendant called for police to respond to the scene. The officer who responded asked Defendant for her identification and then informed her she was not allowed to carry a firearm as a condition of her bond. Defendant agreed that she later pleaded guilty to violating bond conditions.

On cross-examination, when asked about pleading guilty to attempted impersonation of a licensed professional, Defendant stated that she "really didn't have a choice." The State then introduced, as an exhibit to her testimony, a certified copy of the conviction.

Defendant acknowledged that she had signed the form containing the bond conditions on September 28, 2021. She further acknowledged telling the officer who responded to the wreck that she did not know she was violating her bond conditions by carrying a firearm. She testified that this was because she had not read, or been otherwise informed, of her bond conditions.

Defendant agreed that, before C.B. stopped the SUV in the middle of the road, she had not seen him "make actual contact" with any person or vehicle. When asked how many times the black SUV hit her vehicle, Defendant responded, "I thought that when I went over into the median. I wasn't aware if they hit me at the time or not. So we found out if they didn't. So the only contact was the mirror[.]" She agreed, however, that she told Officer Burns that C.B. hit her vehicle "a couple of times[.]" Defendant acknowledged that the 9-1-1 operator never told her to continue following the SUV; rather, she was instructed to "keep a safe distance[.]"

### Jury instructions

At the conclusion of proof, the trial court held a charge conference to discuss defense counsel's request that it instruct the jury on self-defense. The State argued against the instruction, explaining:

> Here's what we don't have . . . a gun being used by these victims. We don't have any testimony of a single word being uttered at this particular defendant by the victims.
>
> All we have is testimony from [Defendant], . . . that a [car]door was opened. That's not enough.
>
> . . . .
>
> With respect to [C.B.'s] opening a car door, if you credit [Defendant], it does not amount to an excuse to point a handgun at somebody[.]

Upon consideration, the trial court found that, when viewed in the light most favorable to Defendant, the proof did not fairly raise the issue of self-defense and denied

- 7 -

the requested instruction. The court noted that, according to Defendant's testimony, she never took any action in self-defense.

Following deliberations, the jury found Defendant guilty of aggravated assault in counts 1 and 3 and reckless endangerment with a deadly weapon in count 2. At a subsequent hearing, the court sentenced Defendant, as a Range I standard offender, to concurrent four-year terms, which the court suspended to supervised probation.

Thereafter, Defendant filed a timely motion for new trial. Following a hearing, the trial court entered a written order, denying the motion for new trial. This timely appeal follows.

## II. Analysis

### *A. Sufficiency of the evidence*

Defendant challenges the sufficiency of the evidence as it relates to her convictions for aggravated assault, asserting that the testimony from C.B. and W.P. was inconsistent and that they were not credible. The State responds that sufficient evidence was presented for any rational trier of fact to find Defendant guilty beyond a reasonable doubt.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

As relevant here, a person commits aggravated assault who intentionally or knowingly commits an assault, and the assault involved the use or display of a deadly weapon. *See* Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii) (2021). Further, "[a] person commits assault who . . . [i]ntentionally or knowingly causes another to reasonably fear imminent bodily injury[.]" Tenn. Code Ann. § 39-13-101(a)(2). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty[.]" Tenn. Code Ann. § 39-11-106(a)(3) (2021). As applicable to the instant case, a "deadly weapon" is "[a] firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury[.]" Tenn. Code Ann. § 39-11-106(a)(6)(A) (2021).

When viewed in the light most favorable to the State, the evidence established that, as C.B. drove towards his home, Defendant began following him "very closely" for several minutes. When C.B. pulled to the side of the road and turned on his hazard lights, Defendant pulled up beside him and pointed a black handgun, while holding it with both hands, directly at C.B. and W.P. C.B. immediately "hit the gas" and fled from Defendant; they testified that they were scared and feared for their lives when Defendant pointed the gun at them. When Officer Burns responded to the little league baseball field to investigate, he confiscated from Defendant a black handgun that was loaded with a Ruger magazine containing fifteen 9mm rounds. Based upon this evidence, any rational trier of fact could find that Defendant intentionally or knowingly caused C.B. and W.P. to reasonably fear imminent bodily injury through the use or display of a deadly weapon. *See* Tenn. Code Ann. §§ 39-13-101(a)(2), -102(a)(1)(A)(iii).

Defendant argues that the testimony from C.B. and W.P. was inconsistent and not credible, and she essentially asks this court to accredit her testimony over that of C.B. and W.P. However, questions of fact, the credibility of witnesses, and the weight to be given the evidence were resolved by the jury, and this court cannot disturb those determinations on appeal. *See Bland*, 958 S.W.2d at 659. Defendant is not entitled to relief.

### B. Self-defense instruction

Defendant contends that the trial court committed plain error by failing to instruct the jury on self-defense. Defendant argues that she was entitled to the instruction based upon her testimony about "how she was feeling" when the door to the SUV hit her passenger-side mirror. The State responds that Defendant is not entitled to plain error relief.

Initially, we agree with the State that Defendant has waived plenary review of this issue because she failed to raise it in her motion for new trial. *See* Tenn. R. App. P. 3(e) (stating that "in all cases tried by a jury, no issue presented for review shall be predicated

- 9 -

upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise, such issues will be treated as waived"). Defendant acknowledges this failure in her brief and requests plain error review.

Plain error relief is "limited to errors that had an unfair prejudicial impact which undermined the fundamental fairness of the trial." *State v. Adkisson*, 899 S.W.2d 626, 642 (Tenn. Crim. App. 1994). In order to be granted relief under plain error relief, five criteria must be met: (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the accused must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is "necessary to do substantial justice." *Id*. at 640-41; *see also State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000) (Tennessee Supreme Court formally adopting the *Adkisson* standard for plain error relief). When it is clear from the record that at least one of the factors cannot be established, this court need not consider the remaining factors. *Smith*, 24 S.W.3d at 283. The defendant bears the burden of persuasion to show that he is entitled to plain error relief. *State v. Bledsoe*, 226 S.W.3d 349, 355 (Tenn. 2007).

"It is well-established in Tennessee that the trial court has the duty of giving a correct and complete charge of the law applicable to the facts of the case and that the defendant has the right to have every issue of fact raised by the evidence and material to the defense submitted to the jury upon proper instructions by the trial court." *State v. Green*, 995 S.W.2d 591, 604-05 (Tenn. Crim. App. 1998) (citations omitted). "In determining whether a defense instruction is raised by the evidence, the court must examine the evidence in the light most favorable to the defendant to determine whether there is evidence that reasonable minds could accept as to that defense." *State v. Sims*, 45 S.W.3d 1, 9 (Tenn. 2001). "Once a general defense is fairly raised, it is incumbent upon the State to negate, beyond a reasonable doubt, the application of a general defense." *State v. Cole-Pugh*, 588 S.W.3d 254, 264 (Tenn. 2019).

Tennessee's self-defense statute provides, in relevant part:

Notwithstanding § 39-17-1322, a person who is not engaged in conduct that would constitute a felony or Class A misdemeanor and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:

(A) The person has a reasonable belief that there is an imminent danger of death, serious bodily injury, or grave sexual abuse;

- 10 -

(B) The danger creating the belief of imminent death, serious bodily injury, or grave sexual abuse is real, or honestly believed to be real at the time; and

(C) The belief of danger is founded upon reasonable grounds.

Tenn. Code Ann. § 39-11-611(b)(2)(A)-(C) (2022). Acts committed in self-defense are justified, and self-defense is a complete defense to crimes of violence. *See* Tenn. Code Ann. § 39-11-601, -611 (2022); *State v. Ivy*, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993).

Our supreme court has explained that because self-defense is a general defense, it

"need not be submitted to the jury unless it is 'fairly raised by the proof.' Tenn. Code Ann. § 39-11-203(c) (2010). The quantum of proof necessary to fairly raise a general defense is less than that required to establish a proposition by a preponderance of the evidence. To determine whether a general defense has been fairly raised by the proof, a court must consider the evidence in the light most favorable to the defendant and draw all reasonable inferences in the defendant's favor. Whenever admissible evidence fairly raises a general defense, the trial court is required to submit the general defense to the jury. From that point, the burden shifts to the prosecution to prove beyond a reasonable doubt that the defense does not apply."

*State v. Perrier*, 536 S.W.3d 388, 403 (Tenn. 2017) (quoting *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013)).

Here, the trial court declined to instruct the jury on self-defense because it found that the evidence, when viewed in the light most favorable to Defendant, did not fairly raise the issue. We agree. Defendant testified that she attempted to draw her gun from its holster when C.B. opened his door because she feared what C.B. was going to do. Defendant's belief of danger, however, must have been "founded upon reasonable grounds," and there was nothing in Defendant's testimony to show that she had a *reasonable belief* that she was in danger of death or serious bodily injury. *See* Tenn. Code Ann. § 39-11-611(b). There was no evidence that C.B. (or C.B.'s friends) had a weapon or threatened Defendant in any way or that Defendant was in danger. Therefore, the testimony failed to demonstrate she had a reasonable belief that she was in danger of death or serious bodily injury. *See State v. Jackson*, No. M2020-01098-CCA-R3-CD, 2022 WL 1836930, at \*29 (Tenn. Crim. App. Jun. 3, 2022) (concluding that the trial court properly determined that a self-defense instruction was not warranted "because there was nothing from which it could be inferred that the Defendant reasonably feared death or serious bodily injury"), *perm. app denied* (Tenn. Oct. 19, 2022). As such, the trial court did not breach any clear and unequivocal

rule of law, which a finding of plain error requires. *See Adkisson*, 899 S.W.2d at 641-42. Defendant is not entitled to relief on this claim.

### C. Cross-examination of Defendant regarding a prior conviction

Defendant contends that the trial court erred by allowing the State to cross-examine her about "a prior bad act" of attempted impersonation of a licensed professional because the court failed to consider the balancing test required by Tennessee Rule of Evidence 608. Defendant further contends that the trial court erred in admitting a certified copy of her conviction for that offense under Rule 608.

The State responds that the trial court did not abuse its discretion in admitting Defendant's prior conviction for attempted impersonation of a licensed professional. The State insists that the conviction was highly probative of Defendant's credibility as the offense involved dishonesty and a false statement and that the danger of unfair prejudice was low because of how dissimilar the prior conviction was to the charged offense of aggravated assault.

Initially, we note Defendant's reliance upon Rule 608 is misplaced; the admission of her prior conviction is governed by Tennessee Rule of Evidence 609, as asserted by the State at the jury-out hearing and on appeal. Rule 609(a) provides:

For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime may be admitted if the following procedures and conditions are satisfied:

(1) The witness must be asked about the conviction on cross-examination. If the witness denies having been convicted, the conviction may be established by public record. If the witness denies being the person named in the public record, identity may be established by other evidence.

(2) The crime must be punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement.

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conviction before trial, and the court upon request must determine that the conviction's probative

- 12 -

value on credibility outweighs its unfair prejudicial effect on the substantive issues. The court may rule on the admissibility of such proof prior to the trial but in any event shall rule prior to the testimony of the accused. If the court makes a final determination that such proof is admissible for impeachment purposes, the accused need not actually testify at the trial to later challenge the propriety of the determination.

Tenn. R. Evid. 609(a)(1)-(3). Additionally, Rule 609(b) states in relevant part, "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release."

"The mere fact a prior conviction of the accused is identical or similar in nature to the offense for which the accused is being tried does not, as a matter of law, bar the use of the conviction to impeach the accused as a witness." *State v. Baker*, 956 S.W.2d 8, 15 (Tenn. Crim. App. 1997) (citing *State v. Miller*, 737 S.W.2d 556, 560 (Tenn. Crim. App. 1987)). Two criteria are especially relevant in determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense. *State v. Mixon*, 983 S.W.2d 661, 674 (Tenn. 1999).

This court typically "review[s] a trial court's ruling on the admissibility of prior convictions for impeachment purposes under an abuse of discretion standard." *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003). "A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning that causes an injustice to the party complaining." *State v. Russell*, 382 S.W.3d 312, 317 (Tenn. 2012). However, this court's review is de novo when a trial court fails to substantially comply with Rule 609's procedural requirements. *State v. Lankford*, 298 S.W.3d 176, 181-82 (Tenn. Crim. App. 2008). Trial courts should "explicitly state their reasons for allowing or disallowing the admission of prior conviction evidence for the purpose of impeachment so the appellate courts may properly determine the rule has been followed in reaching the decision." *Id*. at 181 (quoting *Long v. State*, 607 S.W.2d 482, 485 (Tenn. Crim. App. 1980)).

At the jury-out hearing, defense counsel raised the issue of whether the probative value of the conviction on Defendant's credibility outweighed its unfair prejudicial effect, but the trial court failed to engage in an explicit analysis weighing the probative value of Defendant's conviction against any unfair prejudicial effect. *See Lankford*, 298 S.W.3d at

181. In any event, our de novo review demonstrates that the trial court did not err in allowing the State to cross-examine Defendant regarding the prior conviction under Rule 609 of the Tennessee Rules of Evidence.

The record shows that less than ten years elapsed between Defendant's prior conviction for attempted impersonation of a licensed professional and the commencement of the prosecution in this case, and the State provided reasonable pre-trial written notice of the impeaching conviction. *See* Tenn. R. Evid. 609(a)-(b). Moreover, Defendant's prior conviction was highly probative of her credibility because the offense involved dishonesty. *Waller*, 118 S.W.3d at 371. Tennessee Code Annotated section 39-16-302 states that "[i]t is unlawful for any person who is not licensed to do so, to practice or pretend to be licensed to practice a profession for which a license certifying the qualifications of the licensee to practice the profession is required." Tenn. Code Ann. § 39-16-302. The element of the offense of a person practicing or pretending to be licensed when that person is not licensed involves dishonesty and, thus, is probative of credibility. *See Waller*, 118 S.W.3d at 372 (finding that the statutory elements of the prior convictions should involve dishonesty or false statement for the prior convictions to be probative of credibility). Additionally, the risk of unfair prejudice was low, as Defendant's prior conviction was substantially dissimilar to the charges in this case, *see Mixon*, 983 S.W.2d at 674, and thus, the danger that jurors would "improperly consider the impeaching conviction as evidence of the propensity" of Defendant to commit the crime was low. *See Waller*, 118 S.W.3d at 373. As such, we conclude that the trial court did not err in allowing the State to cross-examine Defendant regarding her prior conviction for attempted impersonation of a licensed professional.

Regarding Defendant's claim that the trial court erred by admitting the certified copy of the judgment of conviction for attempted impersonation of a licensed professional, we note that Defendant did not raise an objection to the admission of the certified copy of the judgment at the jury-out hearing or during trial and did not specifically address the issue in her motion for new trial; rather, defense counsel argued at the jury-out hearing that the State should not be allowed to introduce the warrant upon which the conviction was based, and the trial court agreed.

To preserve an issue for plenary review, a defendant must raise a timely and specific objection in the trial court and later present the same ground in a timely, written motion for a new trial. *State v. Ruiz*, 716 S.W.3d 439, 453 (Tenn. Crim. App. 2024); *see also* Tenn. R. App. P. 36(a); Tenn. R. App. P. 3(e). However, under the plain error doctrine, "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial[.]" Tenn. R. App. P. 36(b). Because Defendant did not raise

this issue in the court below, we will examine it only for plain error.  *See Adkisson*, 899 S.W.2d at 642.

Here, we conclude that consideration of the alleged error is not necessary to do substantial justice.  *See id*.  Prior to the admission of the certified copy of the judgment of conviction, Defendant testified on direct examination that she pleaded guilty to attempted impersonation of a licensed professional in 2016.  She was then able to testify about the facts underlying the conviction, explaining that she had served alcohol after her license had expired but that the manager of the restaurant had failed to inform her of the expired license.  As we have already determined, the trial court properly allowed the State to cross-examine Defendant regarding the conviction under Rule 609, and we note that the State's cross-examination on the subject was limited, that the judgment of conviction was entered as an exhibit without objection by Defendant, and that the State then moved on to other topics in its cross-examination.  Because consideration of the alleged error is not necessary to do substantial justice, Defendant is not entitled to plain error relief.

### D. Cross-examination of Defendant regarding a prior bad act

Defendant asserts that the trial court erred when it allowed the State to cross-examine her about her violating bond conditions in the instant case by carrying a firearm.  Citing Tennessee Rule of Evidence 609, she maintains that the conviction had "little or no probative value as to credibility" and was too similar to the present charge.  The State asserts that Defendant waived this claim by failing to raise it in her motion for new trial and that she has not established entitlement to relief via plain error.

We observe initially that the admission of prior bad act evidence for impeachment purposes is governed by Tennessee Rule of Evidence 608, not Rule 609.  Rule 608 provides, in relevant part, that:

[s]pecific instances of conduct of a witness for the purpose of attacking or supporting the witness's character for truthfulness, other than convictions of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, if probative of truthfulness or untruthfulness and under the following conditions, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness . . . .  The conditions which must be satisfied before allowing inquiry on cross-examination about such conduct probative solely of truthfulness or untruthfulness are:

(1) The court upon request must hold a hearing outside the jury's presence and must determine that the alleged conduct

has probative value and that a reasonable factual basis exists for the inquiry;

(2) The conduct must have occurred no more than ten years before commencement of the action or prosecution . . . and

(3) If the witness to be impeached is the accused in a criminal prosecution, the State must give the accused reasonable written notice of the impeaching conduct before trial, and the court upon request must determine that the conduct's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues.

Tenn. R. Evid. 608(b)(1)-(3). This court reviews a trial court's ruling under Rule 608(b) using an abuse of discretion standard. *State v. Reid*, 91 S.W.3d 247, 303 (Tenn. 2002).

As argued by the State in its brief, Defendant failed to raise this issue in her motion for new trial; accordingly, the issue is waived. *See State v. Harbinson*, 539 S.W.3d 149, 164 (Tenn. 2018) (stating that "[g]rounds not raised in a motion for new trial are waived for purposes of appeal"). While this court may consider an otherwise waived issue for plain error, Defendant has not requested plain error review, and we decline to conduct it. *See e.g., State v. Funk*, No. E2022-01367-CCA-R3-CD, 2023 WL 7130289, at *2-3 (Tenn. Crim. App. Oct. 30, 2023), *no perm. app. filed*; *State v. Neece*, No. E2023-01654-CCA-R3-CD, 2026 WL 413050, at *5 (Tenn. Crim. App. Feb. 13, 2026), *perm. app. filed*; *State v. Maxwell*, No. M2024-00786-CCA-R3-CD, 2026 WL 592500, at *8 (Tenn. Crim. App. Mar. 3, 2026), *no perm. app. filed*; *State v. Mabe*, No. M2024-01521-CCA-R3-CD, 2026 WL 734071, at *8 (Tenn. Crim. App. Mar. 16, 2026), *no perm. app. filed*. Defendant is not entitled to relief based upon this claim.

### E. Discrepancy between judgment and verdict in count 2

While not pointed out by either party, our review of the record indicates that an error exists in the trial court's judgment in count 2. At Defendant's sentencing hearing, the trial court recited that Defendant had been convicted of three counts of aggravated assault, a Class C felony, and imposed concurrent four-year sentences. In accordance with this pronouncement, the judgment of conviction in count 2 lists the "Conviction Offense" as aggravated assault and reflects a four-year sentence, running concurrently with the sentence in count 1. However, the record reflects that the jury found Defendant guilty of reckless endangerment with a deadly weapon in count 2, after the State reduced the charge at the start of trial. Reckless endangerment with a deadly weapon is a Class E felony, and as a Range I offender, Defendant should have received a sentence of not less than one nor

- 16 -

more than two years for that offense.  *See* Tenn. Code Ann. §§ 39-13-103(a), (b)(2); 40-35-112(a)(5).

Because we conclude that the judgment in count 2 does not properly reflect the jury's verdict, we must remand the case back to the trial court for entry of a corrected judgment to reflect that Defendant was convicted of reckless endangerment with a deadly weapon and for imposition of a concurrent, one-year sentence.  *See e.g., State v. Davis*, No. W2014-02101-CCA-R3-CD, 2015 WL 5813394, at *3 (Tenn. Crim. App. Oct. 5, 2015), *perm. app. denied* (Tenn. Feb. 18, 2016).

### III. Conclusion

Based upon the foregoing, we affirm the judgments of the trial court but remand for the entry of a corrected judgment in count 2, as set out above.

s/*Robert L. Holloway, Jr.*

ROBERT L. HOLLOWAY, JR., JUDGE